O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| ARCADIA GARDENS MANAGEMENT CORPORATION,<br><br>             Plaintiff,<br><br>    v.<br><br>GREAT AMERICAN INSURANCE COMPANY OF NEW YORK; DOES 1–100, inclusive,<br><br>             Defendants. | Case No. 2:13-cv-08635-DDP(VBKx)<br><br>**ORDER GRANTING MOTION TO COMPEL APPRAISAL AND STAY LITIGATION**<br><br>[docket number 9] |
|---|---|

## I.   INTRODUCTION

Presently before the court is Defendant's Motion to Compel Appraisal and Stay Litigation (Dkt. No. 9).  Because a stay of this litigation would conserve court resources as well as those of the litigants, and would not prejudice any party, the Court **GRANTS** Defendant's Motion.[1]

## II.   FACTUAL BACKGROUND

Plaintiff operates a residential care facility ("the Facility"), which was insured through a "Select Business Policy Plus" ("the Policy") issued by Defendant. (Complaint ¶ 1).  The Facility is comprised of six wings, all of which are connected

---

[1] After carefully considering the papers filed with respect to this Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

to the same water main. (*Id.* 11). The water pipes supplying four of the six wings also connect to other wings. (*Id.*)

In October 2011, the Los Angeles County Department of Public Health determined that the water at the Facility was contaminated with a deadly bacteria, Legionella pneumophila ("Legionella"), and could not be used. (*Id.* ¶¶ 2, 12). The Facility began using bottled water, installed a chlorination system, and took other steps to combat the Legionella outbreak. (*Id.* ¶¶ 16-17). The Facility also re-piped certain areas that tested positive for Legionella. (*Id.* ¶ 20).

Plaintiff alleges that its efforts to contain the bacteria proved unsuccessful, and that previously uncontaminated rooms began testing positive for Legionella. (*Id.* ¶21). Plaintiff contends that the Facility must be re-piped in its entirety at a cost of several million dollars, and that Defendant has improperly denied coverage for the additional re-piping. (*Id.* ¶¶ 21-23).

In October 2013, Plaintiff filed suit against Defendant in Los Angeles County Superior Court, alleging causes of action for Breach of the Implied Covenant of Good Faith and Fair Dealing and Breach of Contract. Defendant then removed to this court. Defendant contends that it has already paid approximately $650,000 in testing, re-piping, and other expenses. (Motion at 2). Defendant asserts that the Facility does not need to be entirely re-piped. (*Id.*).

The Policy contains an appraisal clause, which states that if the parties "disagree on the value of the property . . . or the amount of loss, either may make written demand for an appraisal of the loss." (Declaration of Samuel H. Ruby, Ex. A at 5)) On November 22, 2013, Defendant's counsel sent Plaintiff a letter requesting an appraisal of the damages resulting from the Legionella contamination and the scope and cost of repair. (Ruby Decl., Ex. B).

Plaintiff refused to submit to an appraisal. (Ruby Decl. ¶ 5.) Defendant now moves to stay this litigation and compel an appraisal.

### III. LEGAL STANDARD

In California, failure to comply with a contract's appraisal provision may constitute sufficient basis to compel an appraisal. Pavlina v. Safeco Ins. Co. of Am., No. 12-CV-534-LHK, 2012 WL 5412796 at *5 (N.D. Cal. Nov. 6, 2012). This court also has the inherent discretionary power to control its docket "in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." CMAX, Inc. v. Hall, 300 F.3d 265, 268 (9th Cir. 1962).

### IV. DISCUSSION

Plaintiff contends that disputed coverage issues must be resolved prior to an appraisal. (Opposition at 6::10-12). Defendant, for its part, acknowledges that an appraisal will not resolve coverage disputes, which then may or may not arise. (Mot. at 5:12; Reply at 3:27-4:1). Defendant argues, however, that an immediate appraisal would promote judicial efficiency and conserve party resources. (Reply at 5-6).

The court agrees with Defendant. Should an appraisal reveal little or no damage, further litigation may be unnecessary. Indeed, even some moderate degree of damage short of that feared by Plaintiff may result in settlement of this dispute or other expeditious resolution, or may minimize the amount of discovery required to resolve outstanding coverage disputes. While a determination of serious loss might lead to further litigation of this matter, the parties would be in substantially the same position as they are today. It does not appear to this Court, nor does Plaintiff contend, that any delay necessitated by an appraisal would be particularly lengthy or cause prejudice to any party. The potential benefits of conducting an immediate appraisal, as contemplated by the Policy, therefore greatly outweigh any countervailing concerns.

### V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion. Within thirty days of the date of this order, each party shall select an appraiser. Together, those two appraisers shall select an umpire. The appraisers shall work with

contractors and water experts to determine the scope of necessary repairs and a timeline for completion of the work.

Within fourteen days of the completion of the timeline, the parties shall submit a joint status report to the Court. The Court will then set a status conference. Until that time, this matter is STAYED.

**IT IS SO ORDERED.**

February 04, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**